ANDREW Z. TAPP, Florida Bar #68002
*Pro Hac Vice*
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, FL 33511-8820
Phone: 813.228.0658
Email: Andrew@Metropolitan.legal

ROBERT E. REPP, OSB #742687
P.O. Box 148
Marylhurst, OR 97036
Phone: 503-701-9659
Email: Repp.medlaw@gmail.com
    Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **ASTORIA DOWNTOWN MARKET, et al.,** | Case No.: 3:18-cv-01367-AC |
| Plaintiffs, | **PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [FED. R. CIV. P. 56]** |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

MOTION AND MEMORANDUM IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Metropolitan Law Group, PLLC
1971 W. Lumsden Rd., #326
Brandon, FL 33511
(813) 228-0658

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ................................................................................................1

II.    STATUTORTY AND REGULATORY AND CASE LAW...............................1

III.    PROCEDURAL AND FACTUAL BACKGROUND........................................5

    a.    Procedural Background........................................................................5

    b.    Undisputed Facts..................................................................................7

IV.    ARGUMENT.......................................................................................................7

V.    CONCLUSION ................................................................................................12

Page i-MEMORANDUM IN SUPPORT OF MOTION    Metropolitan Law Group, PLLC
    FOR SUMMARY JUDGMENT    1971 W. Lumsden Rd., #326
    Brandon, FL 33511
    (813) 228-0658

```
```

## TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES**

*United States v. J & K Mkt. Centerville, LLC*, 679 F.3d 709, 712 (8th Cir. 2012)..........................2

*Warren vs United States*, 2015 WL 5321765 (E.D. KY 2015) ....................................3, 7, 8, 11, 12

**STATUTES**

7 U.S.C. §2011..........................................................................................................................1

7 U.S.C. §§ 2011-2036(c)..........................................................................................................1

7 U.S.C. §2012..........................................................................................................................2

7 U.S.C. §2018......................................................................................................................1, 2

7 U.S.C. §2018(a)(1)(D)............................................................................................................2

7 U.S.C. § 2023........................................................................................................................7

**FEDERAL REGULATIONS**

7 C.F.R. §278(k)(3)(i) ...............................................................................................................3

7 C.F.R. §278.1..........................................................................................................................2

7 C.F.R. §278.1(b)(3) ..........................................................................................1, 2, 5, 7, 8, 10,

7 C.F.R. §278.1(b)(3)(i) ..............................................................................................3, 10, 11

7 C.F.R. §278.1(b)(3)(i)(A) .........................................................................3, 5, 6, 7, 11, 12

7 C.F.R. §278.1(b)(3)(i)(C) .....................................................................................................3, 12

7 C.F.R. §278.1(b)(3)(k) ..........................................................................................................8

7 C.F.R. §278.1(k) ..................................................................................................................11

**OTHER AUTHORITIES**

63 F.R. 23168............................................................................................................9

63 F.R. 24989............................................................................................................4

64 F.R. 23168: ..........................................................................................................8

Federal Rules of Civil Procedure, Rule 56 ............................................................... 1

Oregon Statutes Chapter 475B..................................................................................7

Oregon Statute §167.008 .........................................................................................11

Oregon Statue §167.351..........................................................................................11

Page iii-MEMORANDUM IN SUPPORT OF MOTION      Metropolitan Law Group, PLLC
       FOR SUMMARY JUDGMENT                        1971 W. Lumsden Rd., #326
                                                                                 Brandon, FL 33511
                                                                                  (813) 228-0658

**PLAINTIFFS' MOTION AND MEMORANDUM-BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The Plaintiffs, ASTORIA DOWNTOWN MARKET, an Oregon Sole Proprietorship, and SAMUEL McDANIEL, an Individual, by and through its undersigned counsel, and hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56.

I. INTRODUCTION:

In this matter, the Plaintiffs seek reversal of the United States Department of Agriculture, Food and Nutrition Service (hereinafter referred to as "the Agency," "Department or "Defendant") letter of March 5th, 2018, notifying the Plaintiff of the Agency's decision to permanently deny authorization to participate as a Supplemental Nutrition Assistance Program (hereinafter "SNAP") authorized retailer on the basis of a lack of business integrity. This matter does not involve any allegations of wrongdoing on the part of the Plaintiff related to operation of SNAP, or any type of violation of the regulations.

Instead, it is the Agency's position that the Plaintiff's past drug offense should be interpreted as creating a business integrity risk within the scope of 7 U.S.C. §2018 and 7 C.F.R. §278.1(b)(3). Upon the grounds and for the reasons set forth below, the Plaintiffs have moved the Court to enter a Summary Judgment in their favor as the Defendant's determination to *permanently deny* the Plaintiffs was erroneous, arbitrary and capricious.

II. STATUTORY, REGULATORY AND CASE LAW

The Supplemental Nutrition Assistance Program (SNAP) Act, which was formerly called "The Food Stamp Program," was codified by Congress at 7 U.S.C. §§ 2011-2036(c). SNAP's primary purpose is to safeguard the health and wellbeing of the Nation's population by raising levels of nutrition among low-income households. See 7 USC §2011. The Act contains a variety

Page **1** of **14** MEMORANDUM IN SUPPORT OF MOTION
       FOR SUMMARY JUDGMENT

Metropolitan Law Group, PLLC
1971 W. Lumsden Rd., #326
Brandon, FL 33511
(813) 228-0658

of provisions that govern the issuance of benefits to participants, how those benefits are spent, and where they are spent.

With respect to the "where benefits are spent" component of the Act, the Defendant receives its authorization and authority pursuant to Congress' language in 7 U.S.C. §2018. This statute outlines a number of considerations which Congress intended the Defendant look into when licensing stores. In this instance, the Defendant has based its decision to deny the Plaintiffs' application upon the "business integrity" of the firm. Authorization to make such denial so comes from 7 U.S.C. §2018(a)(1)(D), which states, in pertinent part, that the Department may consider the business integrity and reputation of the applicant in authorizing or denying participation. *See United States v. J & K Mkt. Centerville, LLC*, 679 F.3d 709, 712 (8th Cir. 2012). Congress subsequently declined to define "business integrity" in 7 U.S.C. §2012.

However, in implementing a regulation within the scope of 7 U.S.C. §2018, the Defendant set out in 7 C.F.R. §278.1 standards by which it felt appropriate to adjudge business integrity. In pertinent part, 7 C.F.R. §278.1(b)(3) (which was revised in 1999 to its current language) reads:

> "FNS shall deny the authorization of any firm from participation in the program for a period of time as specified in paragraph (k) of this section based on consideration of information regarding the business integrity and reputation of the firm as follows:
> (i) Conviction of or civil judgment against the owners, officers or managers of the firm for:
>
> (A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction;
>
> (B) Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property, making false claims, or obstruction of justice; or

> (C) Violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses." 7 C.F.R. §278.1(b)(3)(i).

There is only one mention of drugs or controlled substances in this matter, which is contained within subsection C. The case *Warren vs United States*, 2015 WL 5321765 (E.D. KY 2015), dove deeply into this section in a matter in which the Agency attempted to deny licensure to a different retailer in a matter related to a prior drug conviction. The court in *Warren* noted that this section pertains to laws relating to "alcohol licenses, tobacco licenses, firearm licenses, controlled substances licenses, and or gaming licenses." *Id* at 5, 9. "With an express intention of providing greater specificity, without any indication of an intent to apply subsection-(C) with the breadth that the Government advocates for, the regulatory history of this provision is in accord with the regulation's unambiguous language limiting denials to licensing related violations." *Id* at 9. The court in *Warren* continued,

> "Under these long-established canons of construction, as well as indicia from the regulatory history, the Court is persuaded that the agency's interpretation of §278.1(b)(3)(i)(C) to include general controlled substance convictions – as opposed to licensing related controlled substance violations – is inconsistent with the plain language and construction of the regulation… Because Warren's marijuana possession conviction is not a 'conviction… for [a] [v]iolation… of [a] law [] relating to… controlled substances… licenses,' it does not fall within the scope of §278.1(b)(3)(i)(c). The agency's *permanent* denial under the cross-referenced §278(k)(3)(i) was therefore arbitrary and capricious." *Id* at 9.

In what is perhaps the Agency's attempt to run an end-around to avoid the holding in *Warren*, the Department cited §278.1(b)(3)(i)(A) (instead of subsection (C)) as its grounds for denial in this case. Subsection A, which in its plain and unambiguous language indicates that this subsection is intended to bar those applicants who have committed fraud, or a criminal offense related to attempting to, or successfully obtaining a public or private agreement or transaction, is

Page 3 of 14 MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Metropolitan Law Group, PLLC
1971 W. Lumsden Rd., #326
Brandon, FL 33511
(813) 228-0658

plainly targeted to cover business-related activities. §278.1.(b)(3)(i)(A).  Such an interpretation is consistent with the comments on the Final Rule which adopted this language, found at 64 Fed.Red. 23168:

> "As provided in this final rule, business integrity matters that fall under this category include conviction or civil judgment for offenses such as: embezzlement, theft, forgery, bribery, false statements, receiving stolen property, false claims, or obstruction of justice; ***commission of fraud in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction***; and violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances and/or gaming licenses." Emphasis added. *Id*.

The comments make clear that the Agency's intent in Subsection A is consistent with what the clear intent in the written rule was: an attempt to limit participation of firm owners who may attempt to lie, materially misrepresent, or otherwise defraud another business/person in the course of procuring an agreement.  This would reasonably relate to "business integrity" and be within the stated purpose of the Agency's desire in revising the rule to add the language: "Fraudulent activity in the [Food Stamp Program (FSP)] or other government programs, or in business-related activities in general, reflects on the ability of a firm to effectuate the purposes of the FSP and abide by the rules governing the program." *Id*.  There is zero mention of drug convictions anywhere in the rule's comments, nor in the guidance contained with the proposed rule: "Examples of such business integrity matters include conviction or civil liability for offenses such as insurance fraud, tax fraud, and embezzlement." 63 F.R. 24989.

As such, the application of a drug related offense to §278.1.(b)(3)(i)(A) would be a novel application, and one clearly exceeding the unambiguous language contained therein, as well as the intended scope of the subsection's application.

**III.    PROCEDURAL AND FACTUAL BACKGROUND**

    **a.    PROCEDURAL BACKGROUND**

On or about March 1st, 2018, the Plaintiffs, Samuel Alan McDaniel, and his convenience store, Astoria Downtown Market applied to the Agency for authorization to participate in SNAP as a retailer. A.R. 67 – 71. In his application, Plaintiff McDaniel disclosed to the Agency that he was charged in 2007 with "Delivery of Marijuana, Manufacturing, Delivery of a Controlled Substance, and Possession of a Controlled Substance." A.R. 72. With his disclosure, Mr. McDaniel provided a copy of the Judgment from this case, entered by Circuit Judge Maurice K. Merten on April 23rd, 2007. A.R. 80-81. The Judgment notes three counts in which the court accepted plea agreements and issued a conviction: Count 1 – Unlawful Possession of Psilocin; Count 2 – Unlawful Delivery of Psilocin; and Count 3 – Unlawful Delivery of Marijuana. *Id*. Mr. McDaniel was sentenced to probation (among other sanctions) for the violations. *Id*. There were no additional charges or convictions related to those counts, and certainly nothing pertaining to fraud, embezzlement or any type of business related crime.

The Agency's Program Specialist (the individual responsible for processing the application) reviewed the Plaintiffs' SNAP retailer application and noted in a March 5th, 2018 e-mail that the Plaintiffs should be permanently denied under 7 C.F.R. §278.1(b)(3)(i)(A) "because of the owner's convictions of 1) Unlawful Delivery of Marijuana and 2) Unlawful Delivery of Psilocin." A.R. 103. Ms. Merrill states in her e-mail:

> "While the court documents do not cite a specific statute for these convictions, the definition section of the relevant ORS chapter provides us with enough information to conclude that the charges of Unlawful Delivery of Marijuana and Unlawful Delivery of Psilocin fall under 7 CFR §278.1(b)(3)(i)(A)." A.R. 103.

Ms. Merrill proceeds highlight the portion of §278.1(b)(3) that she believes to apply:

Page **5** of **14** MEMORANDUM IN SUPPORT OF MOTION    Metropolitan Law Group, PLLC
    FOR SUMMARY JUDGMENT                                  1971 W. Lumsden Rd., #326
                                                                          Brandon, FL 33511
                                                                          (813) 228-0658

> "(i) Conviction of or civil judgment against the owners, officers or managers of the firm for:
>
> (A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction;" Highlights included in the original. A.R. 104

No explanation is offered by Ms. Merrill for how she equated a drug conviction to a fraud offense in obtaining or performing a private agreement or transaction, and despite an e-mail from Joshline Gounder, Ms. Merill's Section Chief to the Policy Department (A.R. 105), no statement exists in the record from this timeframe as to how the Agency equated drugs to business transactions.

Instead, on the same day (March 5th, 2018), Ms. Gounder issues a letter in which she informs the Plaintiffs that the "Unlawful Delivery of Marijuana and Unlawful Delivery of Psilocin fall under 7 CFR §278.1(b)(3)(i)(A) and 7 C.F.R. §278.1(f)(3)(l). The delivery of two Schedule A controlled substances, marijuana and psychedelic mushrooms was deemed. Was deemed [sic] a business integrity risk." A.R. 145. There was no other basis for denial listed in the letter.

On March 15th, through the undersigned counsel, the Plaintiffs sought an Administrative Review of the application denial. A.R. 147. The Plaintiffs subsequently submitted a brief in support of their appeal (which for whatever reason has been excluded from the Administrative Record) on or about June 11th, 2018. In pertinent part, the Plaintiffs made the same arguments as those contained herein. On or about June 20th, 2018 (and also not contained within the Administrative Record, for whatever reason but attached hereto as **Exhibit A**), Ms. Madeline Viens issued a "Final Agency Decision" on the administrative review.

In her opinion, Ms. Viens attempts to tie the Plaintiff's conviction to a business transaction as contemplated by 7 C.F.R. §278.1(b)(3)(i)(A):

> "FNS reasonably interprets 7 CFR § 278.1(b)(3)(i)(A) to cover criminal offenses in connection with performing a private transaction, such as a drug deal. The conviction therefore has a transactional element and reflects on the owner's business integrity under the regulations. The offense under review is distinguishable from the possession charge at issue in the *Warren* decision cited by counsel." Page 5 of **Exhibit A**.

This Judicial Review was subsequently brought pursuant to 7 U.S.C. §2023.

### b. UNDISPUTED FACTS

The undisputed facts in this case are straightforward. As reflected in the Administrative Record at A.R. 80-81, the Plaintiff, Mr. Samuel McDaniel, was charged with and convicted (by way of plea agreement) with Unlawful Possession of Psilocin, Unlawful Delivery of Psilocin, and Unlawful Delivery of Marijuana. *Id*. Of note, there's no mention of a "drug deal," no charges brought under Chapter 165 (Offenses Involving Fraud or Deception), and no Racketeering charges. Furthermore, the state's laws on marijuana have dramatically changed since 2007, as recreational marijuana and the delivery of marijuana are now legal (though subject to Oregon Statutes Chapter 475B).

Furthermore, the record indicates that the Department's sole basis for license denial in this matter was based upon the correlation of these three charges to the business integrity provisions contained within §278.1(b)(3). A.R. 103-105; **Exhibit A**.

### IV. ARGUMENT

The Agency's entire case is predicated upon the connection between 7 CFR §278.1(b)(3)(i)(A) and the drug offenses for which the Plaintiff was convicted. In a set of circumstances that smell of an attempt by the Agency to avoid the *Warren* decision, there appears to be no guidance or support to make such a linkage.

An analysis of the facts in this case set against the plain language and obvious meaning of

the statute is reasonably laid out plainly. To begin with, 7 CFR §278.1(b)(3) states that an application by a firm which lacks business integrity should be denied, and such denial (pursuant to §278.1(b)(3)(k)) should be permanent in nature. With respect to convictions and their impact on business integrity, there are three specifically set out categories which were, to use the Agency's words from the Comments on the Final Rule, "refined… in this final rule, and [we believe] that the standards included here are appropriate when assessing the business integrity of a firm." 64 F.R. 23168.

These three business integrity related convictions include:

A. Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction;

B. Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property, making false claims or obstruction of justice; or

C. Violating federal, state or local consumer protection laws or other laws relating to licenses for alcohol, tobacco, firearms, controlled substances or gaming.

The Department has chosen not to list the Plaintiffs' disqualification under subsections B or C, though certainly there was nothing prohibiting a denial on multiple grounds. However, it is likely that the Agency chose not select subsection C because of the *Warren* holding, and instead attempted to fit the square peg of drug convictions into the round hole of subsection A.[1]

When read together with the comments (both those in the proposed rule and those in the final rule), it is plain that the Department was seeking to identify adverse business activities that

---

[1] There's no basis for a denial whatsoever under subsection B.

Page **8** of **14** MEMORANDUM IN SUPPORT OF MOTION  Metropolitan Law Group, PLLC
FOR SUMMARY JUDGMENT   1971 W. Lumsden Rd., #326
   Brandon, FL 33511
   (813) 228-0658

would create unnecessary risk in an applicant store operating SNAP transactions and otherwise participating in the program.  Each of the convictions contained in the list logically and reasonably correlate to how the owners and managers operate their store.  Embezzlement, theft, forgery, bribery, falsification, false claims, licensure violations, fraud in obtaining or executing business agreements or transactions -  all speak to offenses involving fraud or deception.  The Agency's comments on the Final Rule about subsection A don't even mention the term "criminal offense," but rather only lists "commission of fraud in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction."  63 F.R. 23168.  The inclusion in the Final Rule of the term "criminal offense" appears to be a catch-all provision for other types of crimes that states may codify that function similarly to the commission of fraud for which the subsection was intended.

All of the language contained in the comments and the regulation pertains to how the owners and managers run their store, and thus logically correlate to "business integrity."  Notably, none of these are personal crimes that only impact the individual and have no correlation to the business.  It is, after all, the business integrity, not the personal history, that the regulation specifically speaks to as its purpose is to evaluate the store's fitness for participation, not to pass judgment on the unrelated history of the applicant owner or manager.

The Department's written notes on the correlation between delivery of marijuana/psychedelic mushrooms and business transactions or agreements are sparse.  What explanation the Agency does offer, both internally and externally, completely fails to substantiate the leap from drug convictions to business transactions or agreements for purposes of an integrity determination.  Ms. Miller's e-mail (A.R. 103-104) highlights sections of the Oregon criminal statutes and the Agency's regulations that plainly nothing to do with one another, though she

attempts to legally correlate the criminal term "delivery" to the business term "transaction."

However, the provisions set out in §278.1(b)(3)(i) are described by the Agency as "refined," and they are clear, specific and unambiguous – and most notably, utterly silent on drug charges (delivery or otherwise). They were drafted and intended to keep stores out that reasonably appear to have a predisposition to regulatory violation. The language in the regulation is not meant to be a bar on personal activity independent of business operation and integrity, but rather to eliminate ambiguity of what criminal and civil convictions/judgments have an impact on business integrity. Those judgments/convictions which are listed are intended to be included in business integrity. Those conviction/judgments that are not included, are not intended to be included in a business integrity determination. As such, this drug conviction falls completely outside of 7 CFR §278.1(b)(3) as there is no logical correlation between the drug conviction and business integrity in any of the subsections, let alone subsection A. Therefore, the Defendant's disqualification and application denial is arbitrary are capricious.

For the sake of argument, if the Court were to completely ignore the plain language and intent of the Agency in drafting and enacting the rule, and look to the terms cited and equated by Ms. Miller, there's still no linkage. Ms. Miller indicates that the term "delivery" is the same thing as transaction. However, "delivery" can be a unilateral act (one person moving an item from point A and depositing it at point B), whereas a "transaction" occurs with a give-and-take, something that must involve a second person. Accordingly, the two terms each have meanings that are not interchangeable.

Likewise, in the Final Agency Decision, Ms. Veins attempts to cover Ms. Miller's invalid linkage of delivery to transaction by claiming that Plaintiff McDaniel's "delivery" charge was transactional in nature by labeling it a "drug deal." **Exhibit A** page 5. The leap between a business

transaction and a drug deal (for which there's no evidence of a "drug deal," merely delivery as set out in the Judgment) as a basis to deny the Plaintiffs' application is laughable. Even still, the regulation takes aim at fraudulent conduct conducted within the course of obtaining or executing an agreement or transaction – not the subject of an agreement which in-and-of-itself is unenforceable by way of illegality. As ridiculous as this analysis is, there wasn't any indication that even had there been a "drug deal," that Mr. McDaniel had fraudulently procured the agreement or fraudulently conducted the transaction – merely that the subject matter itself was illegal and repugnant to the Department.

To take the Department's argument to its end, it would appear that the Agency is attempting to turn §278.1(b)(3)(i)(A) into a catch-all tool to include whatever types of "criminal offenses" it finds objectionable, so long as a transfer (delivery or receipt) took place that it could claim was a "transaction." For example, the solicitation of a sex could be considered as negatively reflective upon business integrity as such solicitation is criminal in nature (Oregon Statute §167.008) and the solicitation sought an agreement of money for sex. Likewise, an applicant who delivers or accepts non-ambulatory livestock at an auction (which is illegal under Oregon Statute §167.351) would be considered lacking business integrity as the delivery (or acceptance) of a non-ambulatory animal is criminal, and it would be termed a "transaction" by the Department.

It was the purpose and intention of §278.1(b)(3)(i) to put to rest these types of cases. The Agency specifically set out the types of behavior it considered to adversely affect business integrity, and intended that such refinement of the previously vague rule. As noted by the court in *Warren*, "the agency noted that several commenters 'expressed concern that the standards proposed [in the draft rule]' relating to business integrity and the permanent denial provision at 278.1(k) were 'too broad, too vague and offer too much discretion to [Agency Section Chiefs] to

Page **11** of **14** MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Metropolitan Law Group, PLLC
1971 W. Lumsden Rd., #326
Brandon, FL 33511
(813) 228-0658

interpret.'" *Id* at 8.  The *Warren* court continued, "by discarding the broad, imprecise language of the prior rule (e.g. 'Criminal conviction records reflecting on the honesty or integrity of officers or managers of the applicant firm') in favor of a rule enumerating the three types of violations that trigger permanent denial, the agency indicated that the specific enumerated offenses -and only those offenses- fall within §278.1(b)(3)(i)(C)." *Id*.

Though the *Warren* court speaks to subsection C, and not as we deal with here in subsection A, the principle is the same.  The Agency was specific that it was trying to identify fraudulent behavior in obtaining and executing business agreements, not merely trying to exclude repugnant criminal violations in which a loose definition of "transaction" could be applied.

The refinement of the regulation was intended to avoid cases like this and *Warren*. Accordingly, this Court should come to the same conclusion that the *Warren* court did, and apply the same logic to subsection A consistent with the Agency's stated intent, and the plain language of the regulation.

V. **C**ONCLUSION

There are no disputed facts in this matter.  The Plaintiff has a criminal conviction in 2007 for delivery of two controlled substances (marijuana and psychedelic mushrooms).  The Defendant, relying upon those convictions, states that 7 C.F.R. §278.1(b)(3)(i)(A) prohibits the Plaintiffs' participation because the drug convictions are indicative of poor business integrity, and that the application should be permanently denied as a result thereof.  However, the Agency's rules are clearly refined to prohibit participants who engaged in fraud during either the procurement or execution of a business agreement or transaction.  The Defendant's stated intent, as set out in detail in the comments to the proposed and final rules, are consistent with this interpretation and the plain reading of the regulation.

There simply is no ambiguity in this case for the Department to hide behind that would justify a wild expansion from a regulation prohibiting fraudulent conduct in business agreements, to the prohibition of any applicant who was convicted of a crime in which a "transaction" could be casually inferred, such as the delivery of marijuana and mushrooms.[2]  Accordingly, Judgment should be entered against the Defendant, and the Final Agency Decision denying the license should be reversed.

### CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 3,892 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Respectfully submitted this 6th day of June, 2019.

        */s/ Andrew Z. Tapp*
ANDREW Z. TAPP, Florida Bar #68002
*Pro Hac Vice*
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, FL 33511-8820
Phone: 813.228.0658
Email: Andrew@Metropolitan.legal
And
ROBERT E. REPP, OSB #742687
P.O. Box 148
Marylhurst, OR 97036
Phone: 503-701-9659
Email: Repp.medlaw@gmail.com
Attorneys for Plaintiff

---

[2] This of course ignores the fact that "delivery" is a unilateral act and "transaction" is a this-for-that exchange.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on June 9, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and a true and correct copy of foregoing pleading was sent via Email to counsel for Defendant:

    Alison Milne, Esq.
    Alison.Milne@usdoj.gov


        *Andrew Z. Tapp*
        Andrew Z. Tapp, Esq.