ANDREW Z. TAPP, Florida Bar #68002
*Pro Hac Vice*
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, FL 33511-8820
Phone: 813.228.0658
Email: Andrew@Metropolitan.legal

ROBERT E. REPP, OSB #742687
P.O. Box 148
Marylhurst, OR 97036
Phone: 503-701-9659
Email: Repp.medlaw@gmail.com
      Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **ASTORIA DOWNTOWN MARKET, et al.,** | Case No.: 3:18-cv-01367-AC |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Counsel have conferred by phone and have been unable to resolve this dispute, despite good faith efforts to do so. Defendant's Counsel has no objection to Plaintiffs filing this response as both parties agree that this matter should be addressed by the Court through motions.

Plaintiffs, ASTORIA DOWNTOWN MARKET, an Oregon Sole Proprietorship, and SAMUEL McDANIEL, an Individual, by and through its undersigned counsel, submits the

1  PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

following response to Defendant's Cross-Motion for Summary Judgment, ECF 38.

## I.  INTRODUCTION

The Plaintiffs present this third memorandum in the series contemplated by the Plaintiffs and Defendant in this single-issue matter.  The issue presented to the Court, and argued in volumes by the parties, is whether or not the Defendant's denial of the Plaintiff's SNAP retailer authorization application was appropriate.  To date, the Plaintiffs have filed a Motion and Amended Memorandum in Support of Motion for Summary Judgment (Doc. 33); the Defendant has filed a Cross Motion and Memorandum in Support of Cross-Motion for Summary Judgment (Doc. 38) and a Response to the Plaintiffs' Motion for Summary Judgment (Doc. 36).

This Response to the Defendant's Motion for Summary Judgment necessarily treads upon the topics and arguments presented in the other memoranda.  There is, unavoidably, overlap between these briefs for both parties as both have presented three briefs each, essentially arguing the same matters thrice.  It is the Plaintiffs' hope that the Court considers both summary judgment motions and all six memoranda contemporaneously.

## II.  STATUTORY, REGULATORY AND CASE LAW

As noted above, this matter involves the Plaintiffs' application for authorization to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP), which is governed by 7 U.S.C. §2018.  Of particular interest in this matter is Congress' grant of authority to the United States Department of Agriculture to consider an applicant firm's "business integrity" in selecting authorized retailers.  §2018(1)(B)(v).

"Business Integrity" as a qualification to participate in SNAP as an authorized retailer has been a part of the program since its inception in 1964 as the Food Stamp Act.  Public Law 88-525 Sec.8(a)(3).  It has persisted in the statute for decades, but has never received specific attention

from Congress to provide detailed guidance to the Agency. Accordingly, the Agency enacted regulations which sought to set out some considerations for business integrity, which is presently included in 7 C.F.R. §278.1.

The initial draft of this regulation stated "The FNS officer in charge may consider: (i) criminal conviction records reflecting on the honesty or integrity of officers or managers of the applicant firm…" 43 Fed. Reg. 43272, 43275 (1978). The regulation remained virtually identical until 1999 when the Department set out to update it, and further refine the regulation for purposes of eliminating fraud within the program. 64 Fed. Reg. 23165-01 (April 1999). It was in this effort that the regulation's current form came to be. In pertinent part, the current incarnation of business integrity considerations is found in 7 C.F.R. §278.1(b)(3), which reads in pertinent part:

> "(3) The business integrity and reputation of the applicant. FNS shall deny the authorization of any firm from participation in the program for a period of time as specified in paragraph (k) of this section based on consideration of information regarding the business integrity and reputation of the firm as follows:
>
> (i) Conviction of or civil judgment against the owners, officers or managers of the firm for:
>
> (A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction." (2019)

There was some commentary provided with the Final Rule that discussed how it would handle the "business integrity" conviction provision contained in §278.1(b)(3)(i):

> "Finally, commenters noted that the proposed business integrity standards were too broad, too vague and offer too much discretion to FNS Officers in Charge to interpret.
>
> In response to these comments, the provisions have been revised in this final rule. First, the standards no longer include references to the business integrity of non-owner or non-managerial personnel. However, the criteria in this final rulemaking still focus on the business integrity and reputation of the ownership and management of those firms seeking authorization or reauthorization in the program. Fraudulent activity in the [Food Stamp Program] FSP or other government

3  PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

programs, or in business related activities in general, reflects on the ability of a firm to effectuate the purposes of the FSP and abide by the rules governing the program. The Department has refined the business integrity criteria in this final rule and believes that the standards included here are appropriate when assessing the business integrity of a firm.

This rulemaking provides that firm be permanently denied the opportunity for reapplication if a firm is denied authorization or reauthorization in the program on the basis of criminal convictions or a finding of civil liability of the ownership or management of an applicant firm for reasons that affect the business integrity of such firms. As provided in this final rule, business integrity matters that fall under this category include conviction or civil judgment for offenses such as: embezzlement, theft, forgery, bribery, false statements, receiving stolen property, false claims, or obstruction of justice; commission of fraud in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; and violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances and/or gaming licenses." 64 Fed Reg. at 23168.

There was no mention within the comments, or the regulation itself, that the business integrity provision was intended to screen applicants with drug related convictions, only that the Department intended the rule to screen those likely to defraud or cheat the system. *Id*.

### III.   UNDISPUTED FACTS

The Plaintiff Samuel McDaniel applied to participate as a SNAP retailer (for the last time) on or about February 26th, 2018. A.R. 67. Mr. McDaniel disclosed to the Defendant a conviction for Unlawful Delivery of Psilocin and Unlawful Delivery of Marijuana on April 23rd, 2007. A.R. 80-81. Plaintiff McDaniel provided all of the documentation pertaining to the convictions that was asked of him by the Defendants, and awaited a decision by the Department regarding his application. See generally A.R. 72-88. Plaintiffs were subsequently denied authorization to participate in SNAP as an authorized retailer upon the specific grounds set forth in the Defendant's denial letter, dated March 5, 2018 and set out in A.R. 145-146. The pertinent language reads as follows:

4   PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT

"This is to notify you that your application… to participate as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP)… is permanently denied… The charges of Unlawful Delivery of Marijuana and Unlawful Delivery of Psilocin fall under 7 CFR 278.1(b)(3)(i)(A) and 7 CFR 278.1(k)(3)(l).  The delivery of two Schedule A controlled substances, marijuana and psychedelic mushrooms was deemed, [sic] was deemed a business integrity risk." A.R. 145.

The Defendant mentioned no other subsection or regulation upon which such denial was based, and given the communication between the Department's Program Specialist (Sarah Merrill) and the Section Chief (Joshline Gounder), the sections listed in the Charge Letter were the complete basis for the denial of authorization.  See A.R. 103-105.

IV.   **ARGUMENT**

Given the briefing that the parties have already submitted to the Department, and that which remains from the Defendant in reply to this Response, it's hard not to view this as beating a dead horse.  However, the Defendant argues two points in its Motion for Summary Judgment (Doc. 38): (A) The Final Agency Decision was not erroneous because the Agency's interpretation of its own regulations was Reasonable and Entitled to Substantial Deference; and (B) FNS's sanction was neither arbitrary nor capricious.  (Doc. 38 pages 7-8).

<u>The Agency's Application of §278.1(b)(3)(i)(A) is Far Afield</u>

The stated purpose of the Rule update in 1999 was "to strengthen integrity and eliminate fraud in the Food Stamp Program by: ensuring that only legitimate stores participate in the program…" 64 Fed. Reg. 23165-01.  Consistent with this intent, the Department fleshed out the formerly vague "business integrity" provision, and refined it to limit the discretion of its officers

5  PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT

in denying application based upon past convictions. *Id* at 23168. The list of crimes that the Defendant contemplated in its creation of 7 C.F.R. §278.1(b)(3)(i)(A) included:

> "As provided in this final rule, business integrity matters that fall under this category include conviction or civil judgment for offenses such as: embezzlement, theft, forgery, bribery, false statements, receiving stolen property, false claims, or obstruction of justice; commission of fraud in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; and violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances and/or gaming licenses." *Id*.

None of that speaks to drug offenses, or in any way reasonably extends to the concept of a person delivering drugs. While the Defendant maintains that simply because the comments don't mention drugs (or anything similar to drug convictions) as grounds for business integrity exclusion, doesn't mean that drug convictions cannot be used as a basis for authorization denial. Doc 38 page 8. But the Department's comments do mention the concerns of commentors who stated that the Department's officers may be inclined to over utilize their discretion. 64 Fed Reg. at 23168. It was for that specific reason that the Department enumerated a variety of business contract/agreement criminal violations as a list of what the rule intended to cover – notably, all involving dishonesty, deceit, theft and fraud. *Id*. This was not intended to be a catch-all provision, or to wrotely exclude anyone with a criminal conviction in which the word "delivery" or "transfer" could be distantly equated to "transaction."

The common theme throughout all of the cited criminal violations is dishonesty, which makes sense given that the Department was trying to eliminate fraud in its revisions of the regulation. The crime of "delivery" of marijuana or psychedelic mushrooms does not imply any level of dishonesty.

Nevertheless, the Department argues that "delivery" makes the offense a "drug deal," and thus a "private transaction." A.R. 177. There's no indication in the record anywhere that there

6  PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

was a bargained for exchange that would make "delivery" a transaction, much less a private agreement.  And even still, the regulation's language prohibits applicants who committed a crime procuring or executing an agreement – not a set of circumstances where the contract itself was illegal.  The regulation presumes that the nature of the contract was legal, and the crime is related to dishonesty in the contract's procurement, or dishonesty in its execution.  If the applicant had voluntarily entered into an illegal agreement (which isn't the crime that Mr. McDaniel's was convicted for – his was merely termed "delivery"), but performed as expected, then there would be no crime in the procurement or execution of the agreement – even if the USDA's interpretation of the regulation were accurate.

Ultimately, the Department's interpretation of this regulation is part of a pattern of the Department trying to increase its discretion without amending the regulations, usually through reading meanings into words that it never intended to exist.  As was the case in *Warren vs. United States*, 2015 WL 5321765 (E.D. KY 2015), the Department is attempting to find a way to exclude applicants with drug offenses from participating in SNAP as authorized retailers.  In that matter, the Department argued that the pertinent drug offense amounted to a "violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses." *Id* at 2.  This interpretation was inconsistent with statutory and regulatory interpretation rules, and likely the result of lay interpretations by Department officials.[1]

---

[1] Neither the Program Specialist nor the Section Chief were attorneys, nor was the Administrative Review Officer.  The record is bereft of any indication that a person with the requisite legal training ever even offered an opinion on the matter before the Assistant U.S. Attorney appeared before the Court in this action.  Such lay interpretation could explain why the Department has overextended the definitions of legal terms in this case, and why legal doctrine was not discussed in the Administrative Review Officer's opinion.

7  PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

The district court in *Warren* noted that two legal interpretation doctrines were applicable to §278.1(b)(3): *ejusdem generis* and *noscitur a sociis*. *Id* at 6. The *Warren* court observed that under the principle of *ejusdem generis*, "when a general [or catchall] term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Warren* at 6 citing *Norfolk & W. Ry. Co. vs. Train Dispatchers*, 499 U.S. 117, 129 (1991). Likewise, the district court stated that *noscitur a sociis* (meaning "a word is known by the company it keeps"), "while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breath to the Acts of Congress" or an agency's regulations. *Warren* at 6 citing *Jarecki vs. G.D. Searle & Co*, 367 U.S. 303, 307 (1961).

When applying these principles to §278.1(b)(3)(i)(A), the term "transaction" should be read to mean a "contract" or an "agreement," as both are specifically set out in the provision, and the generic term is "transaction" in order to describe any other like-kind arrangement which is akin to a contract or an agreement. Likewise, given the contents of the remainder of the provision, the general term "criminal offense," should be reasonably interpreted to include such offenses akin to "fraud," as "fraud" was the specifically set forth term earlier in the sentence. Such an interpretation of this regulation (that convictions for fraudulent or dishonest crimes involving the procurement or execution of an agreement) would match what the Agency's stated intent in the commentary was: preventing fraud and excluding applicants who had been convicted of dishonest crimes.

Therefore, a reading of the regulation to include all "criminal offenses" which involve a "transaction," and then taking it a step further to equate a "transaction" to the Oregon criminal term "delivery," is such an over extension of the meaning and intent of the provision, that it can only be described as plainly erroneous and inconsistent with the regulation. Therefore, the Court

8   PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR
     SUMMARY JUDGMENT

should reject the Agency's interpretation, and adopt that of the Plaintiffs which is consistent with the Government's written intent in the comments to the Final Rule, and the legal interpretation of 7 C.F.R. §278.1(b)(3)(i). See *Marsh vs. Alexander's LLC*, 905 F.3d 610, 623 (9th Cir, 2018).

FNS's Sanction Determination

Because FNS's erroneous determination that the drug conviction is in any way impactful on the Plaintiffs' business integrity as contemplated by 7 C.F.R. §278.1(b)(3)(i), any application of 7 C.F.R. §278.1(k)(3)(i) would be inappropriate as well. A permanent denial to the Plaintiffs for an issue unrelated to business integrity should not warrant a permanent denial under the business integrity provisions.

**V.    CONCLUSION**

Using the legal interpretation principles outlined above in the analysis of 7 C.F.R. §278.1(b)(3)(i), the only reasonable conclusion under the language and the regulatory comments is that the USDA was attempting to combat fraud and identify dishonest retailers who could jeopardize the program's operation. Given that the Plaintiffs' convictions were for delivery of drugs, and not for any level of fraud, dishonesty, theft or the like, it is clearly erroneous to apply the business integrity exclusion to the Plaintiff's application. Therefore, the Court should DENY the Defendant's motion for summary judgment.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 2,798 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Respectfully submitted this 16th day of July, 2019.

9  PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

        */s/ Andrew Z. Tapp*
ANDREW Z. TAPP, Florida Bar #68002
*Pro Hac Vice*
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, FL 33511-8820
Phone: 813.228.0658
Email: Andrew@Metropolitan.legal
And
ROBERT E. REPP, OSB #742687
P.O. Box 148
Marylhurst, OR 97036
Phone: 503-701-9659
Email: Repp.medlaw@gmail.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and a true and correct copy of foregoing pleading was sent via Email to counsel for Defendant:

Alison Milne, Esq.
Alison.Milne@usdoj.gov


*Andrew Z. Tapp*
Andrew Z. Tapp, Esq.