ANDREW Z. TAPP, Florida Bar #68002
*Pro Hac Vice*
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, FL 33511-8820
Phone: 813.228.0658
Email: Andrew@Metropolitan.legal

ROBERT E. REPP, OSB #742687
P.O. Box 148
Marylhurst, OR 97036
Phone: 503-701-9659
Email: Repp.medlaw@gmail.com
      Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **ASTORIA DOWNTOWN MARKET, et al.,** | Case No.: 3:18-cv-01367-AC |
| Plaintiffs, | **PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Counsel have conferred by phone and have been unable to resolve this dispute, despite good faith efforts to do so. Defendant's Counsel has no objection to Plaintiffs filing this response as both parties agree that this matter should be addressed by the Court through motions.

Plaintiffs, ASTORIA DOWNTOWN MARKET, an Oregon Sole Proprietorship, and SAMUEL McDANIEL, an Individual, by and through its undersigned counsel, submits the

following reply to Defendant's Response to Plaintiffs' Amended Motion for Summary Judgment, ECF 36.

## I. INTRODUCTION

The Plaintiffs, Astoria Downtown Market, and Samuel McDaniel, seek authorization to become a Supplemental Nutrition Assistance Program (SNAP) Authorized Retailer. As outlined in detail in the Plaintiffs' initial memorandum in support, and in the Defendant's response thereto, the basic facts of the case are as follows: (1) The Plaintiffs applied to participate in SNAP as an authorized retailer pursuant to 7 C.F.R. §278.1 (A.R.1, A.R. 65); and (2) on March 5th, 2018, the USDA denied authorization for the specifically stated reason that the Plaintiff's past drug convictions qualified for exclusion under 7 C.F.R. §278.1(b)93)(i)(A). A.R. 145. A subsequent administrative review was filed by the Plaintiffs, and the Defendant affirmed its denial. A.R. 173 – 177. This Judicial Review was filed thereafter pursuant to 7 U.S.C. §2023, and the Plaintiffs filed a Motion for Summary Judgment (and amended memorandum in support) thereafter. Doc. 33. The Defendant filed a response (Doc. 36). This Reply is made thereto.

## II. ARGUMENT

### Keeping the Issue Clear

In its Answer Brief (Doc. 36), the Defendant runs down a long and convoluted analysis of how the Department believes that the Unlawful Possession of Psilocin, Unlawful Delivery of Psilocin, and Unlawful Delivery of Marijuana (A.R. 80-81) amounts to a "conviction [for]… commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction" as set out in 7 C.F.R. §278.1(b)(3) for grounds to deny an application. Doc. 36 at Page 7. Effectively, the Defendant argues that any

criminal act which involves any sort of delivery whatsoever, brings that conviction within the business integrity purview of §278.1(b)(3).

However, when "business integrity" was written into the language of the regulation, it was the Department's intent to exclude those businesses where honesty and ability to operate the business was at question.[1] The initial regulation stated, "The FNS officer in charge may consider: (i) criminal conviction records reflecting on the honesty or integrity of officers or managers of the applicant firm…" 43 Fed. Reg. 43272, 43275 (1978). There was no mention of drug charges at the time, and it wasn't for another twenty-one (21) years before the provision would be amended by the Defendant.

On April 30th, 1999, the USDA published its Final Rule updating the business integrity provisions of the rules. The Rule's stated intent "is to strengthen integrity and eliminate fraud in the Food Stamp Program by: ensuring that only legitimate stores participate in the program improving the Department's ability to monitor authorized firms; and strengthening the penalties against firms which violate program rules." 64 FR 23165-01 (April 1999). There have been no revisions to the business integrity portions of the rule since the April 1999 modifications.

It was in this 1999 revision of the rules that the Department acknowledged concerns about too broad of a grant of authority to FNS with respect to "business integrity." The Department had this to say about it:

> "Finally, commenters noted that the proposed business integrity standards were too broad, too vague and offer too much discretion to FNS Officers in Charge to interpret.
>
> In response to these comments, the provisions have been revised in this final rule. First, the standards no longer include references to the business integrity of non-owner or non-managerial personnel. However, the criteria in this final rulemaking still focus on the business integrity and reputation of the ownership and

---

[1] 7 C.F.R. §278 was the successor to what had been 7 CFR §272, for which the undersigned has been unable to locate original copies of the regulations predating the creation of Part 278.

3  PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
   AMENDED MOTION FOR SUMMARY JUDGMENT

management of those firms seeking authorization or reauthorization in the program. Fraudulent activity in the [Food Stamp Program] FSP or other government programs, or in business related activities in general, reflects on the ability of a firm to effectuate the purposes of the FSP and abide by the rules governing the program. The Department has refined the business integrity criteria in this final rule and believes that the standards included here are appropriate when assessing the business integrity of a firm.

This rulemaking provides that firm be permanently denied the opportunity for reapplication if a firm is denied authorization or reauthorization in the program on the basis of criminal convictions or a finding of civil liability of the ownership or management of an applicant firm for reasons that affect the business integrity of such firms. As provided in this final rule, business integrity matters that fall under this category include conviction or civil judgment for offenses such as: embezzlement, theft, forgery, bribery, false statements, receiving stolen property, false claims, or obstruction of justice; commission of fraud in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; and violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances and/or gaming licenses." *Id* at 23168.

There's literally no mention of drug related crimes anywhere in the comments to the rule (though there's a mention of licensure violations pertaining to controlled substances in a different provision, which as previously mentioned in the Plaintiffs' initial brief, was the subject of the last time the Department attempted to exclude a potential retailer on the basis of a drug conviction in *Warren vs. United States*, 2015 WL 5311765 (E.D. KY 2015); the district court in *Warren* rejected the Department's denial of authorization and sided with the retailer.). As such, there's no credibility to the argument that this rule was designed in any way to bar applicants with past personal drug convictions.

**<u>Criminal Offenses Committed in Connection with Performing a Private Transaction</u>**

As noted above, the Defendant argues that the delivery of drugs in a personal capacity falls into the category of "criminal offenses committed in connection with performing a private transaction." (Doc. 36 at Page 8). In support of this contention, the Defendant's tenuous hold on

4  PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
AMENDED MOTION FOR SUMMARY JUDGMENT

this argument relies upon the concept that "delivery" as contained within Or. Rev. Stat. §475.005(8) relies upon two persons, thus making it a private transaction. (Doc. 36 at 7).

In this vein, the Defendant declares, *without citation or support*, that the terms "delivery" and "transaction" are interchangeable in Oregon. (Doc 36 page 7). This equivalence is plainly a reach by the Department: unsupported in law or logic. The United States Postal Service can deliver a letter to my neighbor's mailbox which was addressed to me – but that isn't to say that USPS and my neighbor were involved in a transaction. Delivery is an act, which although may be part of a transaction, is not confined to the bounds of a transaction – nor does its occurrence create a transaction in-and-of-itself.

Furthermore, the Defendant's argument misses the fact that the term "transaction" we're paying attention to in this case isn't located in the Oregon Statutes, but rather in the United States Department of Agriculture's SNAP regulations.[2] Certainly, the Oregon legislature's definition of "delivery" as used in their criminal code context is not interchangeable with the definition of "transaction" in a Federal Agency's context for purposes of civil business integrity rulemaking. Instead, the determinative definition of "transaction" should come from the context in which it is used in the SNAP Regulations, and the provision as a whole should be interpreted consistent with legal interpretation principles.

**The Appropriate Legal Interpretation of § 278.1(b)(3)(i)(A)**

As was the case in *Warren*, the Department is attempting to find a way to exclude applicants with drug offenses from participating in SNAP as authorized retailers. In that matter, the Department argued that the pertinent drug offense amounted to a "violation of Federal, State

---

[2] The Department later flips on the issue, noting on page 9 of the Response Brief that "SNAP is a federal program governed by federal laws." Doc 36, Page 9.

5  PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
   AMENDED MOTION FOR SUMMARY JUDGMENT

and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses." *Id* at 2. This interpretation was inconsistent with statutory and regulatory interpretation rules, and likely the result of lay interpretations by Department officials.[3]

The district court in *Warren* noted that two legal interpretation doctrines were applicable to §278.1(b)(3): *ejusdem generis* and *noscitur a sociis*. *Id* at 6. The *Warren* court observed that under the principle of *ejusdem generis*, "when a general [or catchall] term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Warren* at 6 citing *Norfolk & W. Ry. Co. vs. Train Dispatchers*, 499 U.S. 117, 129 (1991). Likewise, the district court stated that *noscitur a sociis* (meaning "a word is known by the company it keeps"), "while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breath to the Acts of Congress" or an agency's regulations. *Warren* at 6 citing *Jarecki vs. G.D. Searle & Co*, 367 U.S. 303, 307 (1961).

When applying these principles to §278.1(b)(3)(i)(A), the term "transaction" should be read to mean a "contract" or an "agreement," as both are specifically set out in the provision, and the generic term is "transaction" in order to describe any other like-kind arrangement which is akin to a contract or an agreement. Likewise, given the contents of the remainder of the provision, the general term "criminal offense," should be reasonably interpreted to include such offenses akin to "fraud," as "fraud" was the specifically set forth term earlier in the sentence.

---

[3] Neither the Program Specialist nor the Section Chief were attorneys, nor was the Administrative Review Officer. The record is bereft of any indication that a person with the requisite legal training ever even offered an opinion on the matter before the Assistant U.S. Attorney appeared before the Court in this action. Such lay interpretation could explain why the Department has overextended the definitions of legal terms in this case, and why legal doctrine was not discussed in the Administrative Review Officer's opinion.

As such, an interpretation of this regulation should be as follows: applicants who have been convicted for fraudulent or dishonest crimes involving the procurement or execution of an agreement are barred from participation. This interpretation would match what the Agency's stated intent in the commentary: preventing fraud in the program by excluding applicants who had been convicted of dishonest crimes that could indicate a propensity for continued dishonest business behavior and practices.

> "As provided in this final rule, business integrity matters that fall under this category include conviction or civil judgment for offenses such as: embezzlement, theft, forgery, bribery, false statements, receiving stolen property, false claims, or obstruction of justice; commission of fraud in connection with obtaining, attempting to obtain or performing a public or private agreement or transaction; and violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances and/or gaming licenses." 64 FR 23168 (1999).

Therefore, the Department's reading of the regulation to include all "criminal offenses" which involve a "transaction," and then taking it a step further to equate a "transaction" to the Oregon criminal term "delivery," is such an over extension of the meaning and intent of the provision, that it can only be described as plainly erroneous and inconsistent with the regulation. Accordingly, the Court should reject the Agency's interpretation, and adopt that of the Plaintiffs which is consistent with the Government's written intent in the comments to the Final Rule, and the legal interpretation of 7 C.F.R. §278.1(b)(3)(i). See *Marsh vs. Alexander's LLC*, 905 F.3d 610, 623 (9th Cir, 2018).

**Past Practice Doesn't Excuse Inappropriate Application**

The Defendant concludes its Response Brief by noting that "FNS has denied other retail firms participation in SNAP based upon criminal convictions of owners, officers, or managers involving controlled substances," inferring that such past practices justify continued misapplication. Doc 36 Pages 9-10. This acknowledgement of past misapplication of the

regulation is disconcerting and gives credence to the commentors concerns back in 1999 that the Agency would abuse its discretion if permitted too vague an application of the regulations.

But again, the Defendant misses the important nexus: a past drug conviction – which involves no elements deception or dishonesty the way that fraud, misrepresentation, theft, or forgery do – is not a meaningful prospective indication that the owner is likely to defraud the program or compromise program integrity. Merely breaking a law does not translate to a present likelihood to perpetrate fraud against the Federal Government.[4]

Similar laws like driving under the influence of alcohol (a drug related law), or possession of prescription medication without a prescription -which share more commonalities with the crimes the Plaintiff was convicted of- don't indicate whether or not that person is capable of running a legitimate and upstanding business. They're indicators that the applicant may have personal and substance abuse issues to address, but do not indicate there is something inherently wrong with the moral fiber of his or her being. Furthermore, when drug convictions are as distantly removed in time as they are here (more than a decade separated the conviction from the SNAP application), there's simply nothing to indicate that the applicant has anything wrong at present that would impact his/her business integrity.

### III. CONCLUSION

The legal interpretation of 7 C.F.R. §278.1(b)(3)(i)(A) is subject to the doctrines of *ejusdem generis* and *noscitur a sociis*. Using these doctrines, the provision should be interpreted to bar applicants with criminal (or civil) convictions of fraud or dishonesty in connection with the

---

[4] Though not at issue in this case, such an analysis is consistent with the remainder of the subsection: 7 C.F.R. §278.1(b)(3)(vi) notes that the Department is seeking to exclude offenses which indicate a lack of business integrity or business honesty and directly affects the *present* responsibility of a person. The issue is not that a person may have at one time committed a crime, but rather whether or not that offense is indicative of a present likelihood to commit fraud.

procurement or execution of an agreement or contract.  A drug delivery conviction does not fit into the legal interpretation of the regulation at all, and therefore, justifying the Plaintiffs' application denial upon those grounds is erroneous and inconsistent with the language of the regulation.  This Court should GRANT the Plaintiffs' motion for summary judgment, and issue Judgment to that effect.

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 2,699 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Respectfully submitted this 16th day of July, 2019.

        /s/ Andrew Z. Tapp
ANDREW Z. TAPP, Florida Bar #68002
*Pro Hac Vice*
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, FL 33511-8820
Phone: 813.228.0658
Email: Andrew@Metropolitan.legal
And
ROBERT E. REPP, OSB #742687
P.O. Box 148
Marylhurst, OR 97036
Phone: 503-701-9659
Email: Repp.medlaw@gmail.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and a true and correct copy of foregoing pleading was sent via Email to counsel for Defendant:

9  PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT

Alison Milne, Esq.
Alison.Milne@usdoj.gov

*Andrew Z. Tapp*
Andrew Z. Tapp, Esq.