UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ASTORIA DOWNTOWN MARKET; and SAMUEL MCDANIEL, | Case No. 3:18-cv-01367-AC |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs, Astoria Downtown Market, an Oregon sole proprietorship ("Astoria") and Samuel McDaniel, an Individual ("McDaniel") (collectively "Plaintiffs"), seek judicial review of the decision of the Food and Nutrition Service, an agency of defendant, the United States of America (the "Agency," "FNS," or "Defendant"), to permanently deny Plaintiffs' authorization to participate as a food retailer in the Supplemental Nutrition Assistance Program ("SNAP") pursuant

Page 1 – FINDINGS AND RECOMMENDATION

to 7 C.F.R. § 278.1(k)(3)(i).  The central question presented is whether McDaniel's convictions for unlawful delivery of controlled substances constitute a lack of business integrity within the meaning of 7 C.F.R. § 278.1(b)(3)(i)(A).

Presently before the court are the parties' cross-motions for summary judgment.  Plaintiffs ask the court to find the Agency's permanent denial was erroneous, arbitrary, and capricious, and to reverse the Final Agency Decision and enter summary judgment in their favor.  The Agency moves for summary judgment affirming the Agency's decision.

The court finds that McDaniel's convictions do not fall within the meaning of 7 C.F.R. § 278.1(b)(3)(i)(A), and therefore, the Agency's permanent denial of authorization pursuant to 7 C.F.R. § 278.1(k)(3)(i) was erroneous, arbitrary, and capricious.  Accordingly, Plaintiffs' motion for summary judgment (ECF No. 33) should be GRANTED, in part, and DENIED, in part, and Defendant's motion for summary judgment (ECF No. 38) should be DENIED.  The court should vacate the Agency's decision, and remand for further proceedings before the FNS consistent with this Findings and Recommendation.

*Background*

The parties do not dispute the following facts.  McDaniel owns a small retail food store, the Astoria Downtown Market, in Astoria, Oregon.  (Compl., ECF No. 1, ¶ 1.)  McDaniel was convicted of Unlawful Delivery of Marijuana and Unlawful Delivery of Psilocin ("Convictions") on February 8, 2007.  (*Id.* ¶¶ 6–7.)  On November 15, 2017, McDaniel applied to FNS to accept Electronic Benefits Transfer ("EBT") payments under SNAP, formerly known as the Food Stamp Program.  (*Id.* ¶¶ 2–3, Ex. A.)  On March 5, 2018, the Agency sent a letter to Plaintiffs denying their request for authorization to participate as a retail food store pursuant to 7 C.F.R. §

Page 2 – FINDINGS AND RECOMMENDATION

278.1(k)(3)(i). (*Id.* ¶ 4.) 7 C.F.R. § 278.1(k)(3)(i) requires the Agency to permanently deny authorization to applicants who have been deemed business integrity risks pursuant to Section 278.1(b)(3)(i). 7 C.F.R. § 278.1(k)(3)(i) (2019). The Agency determined that McDaniel's Convictions fall within 7 C.F.R. § 278.1(b)(3)(i)(A), and therefore, constitute a business integrity risk. (*Id.* ¶ 6.)

Plaintiffs appealed the Agency's decision, arguing McDaniel's Convictions are not reasonably related to an issue of business integrity, and the Agency exceeded its authority under 7 U.S.C. § 2018 in finding a past drug charge qualified as a business integrity risk. (Compl. ¶ 7.) The Administrative Review Branch issued a Final Agency Decision ("FAD") on June 20, 2018, denying Plaintiffs' administrative appeal. (*Id.* ¶ 8.) Plaintiffs filed this lawsuit on July 20, 2018, seeking *de novo* judicial review pursuant to 7 U.S.C. § 2023(a)(15), and requesting this court reverse the Agency's decision. (*Id.* ¶ 40.) Both parties move for summary judgment on the question of whether McDaniel's previous convictions fall within the meaning of 7 C.F.R. § 278.1(b)(3)(i)(A). (Pls.' Am. Mot. for Summ. J. ("Pls.' Mot. S.J."), ECF No. 33; Def.'s Cross-Mot. for Summ. J. ("Def.'s Mot. S.J."), ECF. No. 38.)

*Legal Standards*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence

Page 3 – FINDINGS AND RECOMMENDATION

of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Standard of Review*

The Food Stamp Act, codified at 7 U.S.C. §§ 2011 *et seq.*, provides that the standard for judicial review of an FNS decision to deny an application to participate in SNAP is *de novo*. 7 U.S.C. § 2023(a)(15) (2018). *De novo* review is not limited to the administrative record, and the applicant has the burden to prove by a preponderance of the evidence that the agency's action was invalid. *Kim v. United States*, 121 F.3d 1269, 1271–72 (9th Cir. 1997). "Review of the sanction imposed by the FNS is under the arbitrary and capricious standard." *Wong v. United States*, 859 F.2d 129, 132 (9th Cir. 1988). The reviewing court shall hold unlawful and set aside an agency action found to be not in accordance with the law. 5 U.S.C. § 706(2)(A) (2018).

*Discussion*

I. Overview of SNAP

Congress enacted the Food Stamp Act in 1964 to "raise levels of nutrition among low-income households." *Dept. of Health and Welfare, State of Idaho v. Block*, 784 F.2d 895, 897 (9th Cir. 1985) (quoting Pub. L. No. 91–671, § 2, 84 Stat. 2048 (Jan. 11, 1971)). SNAP allows low-income families to use their allotment "to purchase food from retail food stores which have been approved for participation in [SNAP]." 7 U.S.C. § 2013(a) (2018). Retailers must apply for authorization to accept benefits and are approved where their "participation will effectuate the purposes of [SNAP]." 7 U.S.C. § 2018(a)(1)(A) (2018). Congress prescribes several factors FNS must consider, and the relevant factor here is "the business integrity and reputation of the applicant." 7 U.S.C. § 2018(a)(1)(B)(v) (2018). Additionally, Congress requires a minimum waiting period of six months for reapplication when an applicant is not approved, and allows FNS

Page 5 – FINDINGS AND RECOMMENDATION

to establish longer periods, "including permanent disqualification, that reflects the severity of the basis of the denial." 7 U.S.C. § 2018(d) (2018).

FNS has promulgated regulations which describe, in more detail, the business integrity qualifications for a retail food store's authorization to participate in SNAP. 7 C.F.R. § 278.1(b)(3) (2019). Subsection (b)(3) has six categories where FNS "shall deny" authorization for a specified time period if the applicant's business integrity or reputation is at issue. *Id.* Specifically at issue here is a portion of the first category which provides:

> (i) Conviction of or civil judgment against the owners, officers or managers of the firm for:
>
> *(A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction;*
>
> (B) Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property, making false claims, or obstruction of justice; or
>
> (C) Violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances, and/or gaming licenses[.]

7 C.F.R. § 278.1(b)(3)(i) (emphasis added).[1]

Subsection (k)(3) prescribes the time periods for which FNS must deny applicants when it finds the applicant "lack[s] the necessary business integrity and reputation to further the purposes

---

[1] The second through fifth categories, generally, require denial where administrative findings or evidence show an applicant committed SNAP or other government program violations. 7 C.F.R. § 278.1(b)(3)(ii)–(v). The sixth category is a catch-all: "Commission of any other offense indicating a lack of business integrity or business honesty of owners, officers or managers of the firm that seriously and directly affects the present responsibility of a person." 7 C.F.R. § 278.1(b)(3)(vi).

Page 6 – FINDINGS AND RECOMMENDATION

of the program." 7 C.F.R. § 278.1(k)(3). Most categories require denial for a specified period, typically one to three years, but the first category requires permanent denial. *Id.*

II. McDaniel's Convictions

The parties dispute whether McDaniel's Convictions are "criminal offense[s] in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction." 7 C.F.R. § 278.1(b)(3)(i)(A). Much of the parties' dispute surrounds the definition of "delivery." Plaintiffs assert "delivery" can be a unilateral act, a person moving an item from one place to another. (Pls.' Mot. S.J. at 10.) The Agency counters that "delivery" and "transaction" are interchangeable in Oregon. (Def.'s Resp. to Pls.' Mot. S.J. ("Def.'s Resp."), ECF No. 36, at 7.) Both parties' arguments miss the mark.

"Delivery" is defined in Oregon as "the actual, constructive or attempted transfer, other than by administering or dispensing, *from one person to another* of a controlled substance, whether or not there is an agency relationship." OR. REV. STAT. § 475.005(8) (2017) (emphasis added). Consequently, Plaintiffs' argument is unavailing in the context of this case, because transfer from one person to another is a required element for a delivery conviction. Conversely, the Agency concludes the definition's bilateral requirement allows interchangeable use of the words delivery and transaction. Oregon does not define "transaction" in Chapter 475, but Black's Law Dictionary defines the term as follows:

> 1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons. 4. *Civil Law.* An agreement that is intended by the parties to prevent or end a dispute and in which they make reciprocal concessions.

BLACK'S LAW DICTIONARY 1635 (9th ed. 2009) (emphasis in original). The Agency is correct

Page 7 – FINDINGS AND RECOMMENDATION

that the terms can be used interchangeably using the third definition. However, other definitions of "transaction" are narrower and require consideration to be present.

In Oregon, a delivery conviction can encompass one person selling drugs to another, but the presence of consideration is not a required element for delivery. *See State v. Villagomez*, 362 Or. 390, 405 (2018) (explaining "delivery is not synonymous with sale . . . under Oregon law, you can be charged with delivery and no sale have ever occurred." (internal quotes omitted)). The Oregon Supreme Court also noted that "in drug law, the term delivery is much, much broader than actual hand-to-hand transfers." *Id.* at 407 (internal quotes omitted).

The Agency's argument that delivery and transaction can *per se* be used interchangeably is flawed. The word "transaction" can be used in a variety of ways, requiring the court intimate its meaning in the context of 7 C.F.R. § 278.1(b)(3)(i)(A), not purely in the context of a drug conviction.

III. The Meaning of 7 C.F.R. § 278.1(b)(3)(i)(A)

This case presents a purely legal question for the court to resolve, whether the Agency's interpretation of its regulation is entitled to deference. What is commonly referred to as *Auer* deference does not apply unless the regulation is "genuinely ambiguous." *Kisor v. Wilkie*, ___ U.S. ___, 139 S. Ct. 2400, 2415 (2019). "Before concluding that a rule is genuinely ambiguous, a court must exhaust all the traditional tools of construction." *Id.* (internal quotes omitted). "A court must carefully consider the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* (internal quotes omitted).

Even if genuine ambiguity remains, the agency's interpretation "must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id.* at 2415–16.

*Auer* deference sometimes applies because a court presumes Congress intended agencies to resolve some ambiguities. *Id.* at 2416. *Kisor* proscribes this presumption unless: (1) it is the agency's "authoritative" or "official position;" (2) the agency's interpretation implicates its substantive expertise; and (3) the agency's interpretation "must reflect fair and considered judgment." *Id.* at 2416–17. Consequently, before the court can apply *Auer* deference, the regulation must be genuinely ambiguous, and the *Kisor* factors must be met.

    A. Section 278.1(b)(3)(i)(A) is Unambiguous

        1. The Text and Structure of 7 C.F.R. § 278.1(b)(3)(i)(A)

"A regulation should be construed to give effect to the natural and plain meaning of its words." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 698 (9th Cir. 2004) (quoting *Crown Pacific v. Occupational Safety & Health Review Comm'n*, 197 F.3d 1036, 1038 (9th Cir. 1999)). Construing regulations "is a holistic endeavor, and at a minimum must account for [its] full text, language as well as punctuation, structure, and subject matter. *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.* 508 U.S. 439, 455 (1993) (internal quotes omitted).

An applicant must be denied authorization for participation in SNAP "based on consideration of information regarding the business integrity and reputation of the firm as follows: "(i) Conviction of or civil judgment against the owners, officers or managers of the firm for: (A) Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction[.]" 7 C.F.R. § 278.1(b)(3)(i)(A). The Administrative Review Officer ("ARO") stated in the FAD, "FNS reasonably interprets 7 C.F.R. § 278.1(b)(3)(i)(A) to cover criminal offenses in connection with performing a private transaction,

such as a drug deal." (Compl., Ex. A.) The Agency contends any criminal offense that encompasses a transactional element falls within the meaning of subsection (b)(3)(i)(A). (Def.'s Mot. S.J., at 7.) The parties appear to agree the plain language of 7 C.F.R. § 278.1(b)(3)(i)(A) is unambiguous, but rather dispute its scope. (Pls.' Mot. S.J., at 10; Def.'s Resp., at 6–7.) The Agency asserts the language of 7 C.F.R. § 278.1(b)(3)(i)(A) is broad, while Plaintiffs argue the word "transaction" is limited to the context of a "business term." (*Id.*) Plaintiffs' argument is more persuasive.

It stretches logical reasoning to think any criminal offense, where some activity that fits into the broad definition of "transaction" has taken place in connection with the offense, is captured by a subsection of a regulation titled "The business integrity and reputation of the applicant." 7 C.F.R. § 278.1(b)(3). The canon of *noscitur a sociis*—literally translated, "it is known by its associates"—reinforces this argument. Courts use this canon "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to Acts of Congress." *Yates v. United States*, ___ U.S. ___, 135 S. Ct. 1074, 1085 (2015) (internal quotes omitted).

In *Yates*, a commercial fisherman was convicted for violating 18 U.S.C. § 1519 when he ordered his crew to toss fish back into the sea to prevent federal authorities from confirming he had harvested undersized fish. *Id.* at 1078. Section 1519 states:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519.  The government reasoned that because the fisherman disposed of the suspect fish, he had destroyed a "tangible object" within the meaning of Section 1519.  *Yates*, 135 S. Ct. at 1079.  The Court first noted that fish are certainly a tangible object.  *Id.*  However, 18 U.S.C. § 1519 is part of the Sarbanes-Oxley Act of 2002, which was enacted following the Enron scandal. *Id.*  The Court reasoned, "it would cut § 1519 loose from its financial-fraud mooring to hold that it encompasses any and all objects, whatever their size and significance, destroyed with obstructive intent."  *Id.*  The Court held that a tangible object, within the meaning of Section 1519, "must be one used to record or preserve information."  *Id.*

This court is faced with an analogous situation in the present case.  The Agency contends because McDaniel committed a criminal offense that involved (arguably) a "transaction," the Agency properly denied the Plaintiffs' authorization within the meaning of 7 C.F.R. § 278.1(b)(3)(i)(A).  To find the Agency's interpretation reasonable, the court would have to ignore the surrounding words of the regulation, which statutory construction principles prohibit.

First, subsection (3) commands FNS to deny authorization "based on consideration of information regarding the business integrity . . . of the firm[.]"  7 C.F.R. § 278.1(b)(3).  Any subheadings of subsection (3) must then relate to a firm's probability or ability to conduct its business with honesty.

Second, the lead-in, (i), to subsections (A)–(C) states, "Conviction of or civil judgment against the owners, officers, or managers of the firm for . . . ."  7 C.F.R. § 278.1(b)(3)(i).  The first clause of this part, "conviction of or civil judgment against," is clearly meant to capture both criminal and civil wrongdoing that speak to the business integrity of a firm.  Additionally, the words chosen are clearly meant to convey the wrongdoer must have been more than accused of

Page 11 – FINDINGS AND RECOMMENDATION

wrongdoing or that evidence of wrongdoing is present, but rather a court has entered a judgment, whether criminal or civil.

Finally, the first clause of (A), "commission of fraud or a criminal offense," reiterates the concepts of (3) and (i). Fraud requires that a person knowingly misrepresents or conceals the truth to induce another to act to his detriment, which is certainly a dishonest act. *See* BLACK'S LAW DICTIONARY 731 (9th ed. 2009). The term fraud is also typically used in the civil law context. *Id*. The additional "or criminal offense" simply echoes (i) in that both civil fraud and crimes that are fraudulent in nature are to be encompassed in the rule.

Considering the text, as a whole, and the structure of 7 C.F.R. § 278.1(b)(3)(i)(A), the court finds a "criminal offense in connection with . . . a transaction" is limited to those crimes that are fraudulent in nature or directly implicate the business integrity of the firm. Put another way, the manner in which the transaction was conducted must be what is illegal, not just that a crime was committed which happened to involve a transaction. Were the court to hold the latter, it would be no different than a fish being considered a tangible object in a statute meant to curb financial fraud.

    2. The Purpose and History of 7 C.F.R. § 278.1(b)(3)(i)(A)

The court finds little to no ambiguity in the text and structure of 7 C.F.R. § 278.1(b)(3)(i)(A). Traditionally, courts end their analysis there, however, *Kisor* commands the court to evaluate "the text, structure, history, *and* purpose of a regulation[.]" *Kisor*, 139 S. Ct. at 2415 (emphasis added). The Agency's reading of the rule is not reasonable, and the purpose and history of SNAP reinforce that argument.

The purpose of SNAP is to allow "low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power[.]" 7 U.S.C. § 2011. Additionally, regulations "shall provide . . . for the approval of those [retail food stores] whose participation will effectuate the purposes of [SNAP]." 7 U.S.C. § 2018(a)(1)(A). Congress provided a non-exhaustive list of factors FNS must consider, mainly relating to availability and type of food sold by the applicant, but the final two factors relate to Congress's desire to prevent fraudulent transactions. 7 U.S.C. § 2018(a)(1)(B). The over-arching concern for FNS, when approving a retail food store, is to ensure the store's owners and managers won't cheat the program, for their gain, to the detriment of the taxpayers who fund the program.

As the purpose of SNAP is to provide food security to needy families, these remedial statutes and regulations should be construed to allow participation rather than forbid it. *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) ("[W]e are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes."). The court also recognizes FNS has a duty to reduce SNAP violations and fraudulent or dishonest behavior to effectuate the purpose of SNAP—making sure the program's limited resources feed needy families. Where statutes and regulations forbid retail food stores from participating in SNAP, those exclusionary rules should be read narrowly to comport with SNAP's purposes. Supporting this conclusion is Congress's statement that "[t]he Secretary may establish a longer time period [for reapplication], [when an applicant is denied approval,] including permanent disqualification, *that reflects the severity of the basis of the denial*." 7 U.S.C. § 2018(d) (emphasis added). Section 278.1(b)(3)(i) is the only factor of six that requires permanent

disqualification, which is the most severe form of denial, and it is wholly outside the purpose of SNAP to read that subsection with such sweeping breadth as the Agency suggests here.

The regulatory history also supports the court's conclusion. The U.S. Department of Agriculture's ("USDA") 1998 proposed rule, which is equivalent to the present 7 C.F.R. § 278.1(b)(3)(i)(A), provided FNS shall deny applicants who have "(i) Criminal conviction records reflecting on the business integrity of owners, officers, managers, or other personnel of the applicant firm[.]" 63 Fed. Reg. 24,985, 24,992 (May 6, 1998). The USDA stated, "[e]xamples of such business integrity matters include conviction or civil liability for offenses such as insurance fraud, tax fraud, and embezzlement." 63 Fed. Reg. at 24,989.

After the proposed rule was published, "commenters noted that the proposed business integrity standards were too broad, too vague and offer too much discretion to FNS Officers in Charge to interpret." 64 Fed Reg. 23,165, 23,168 (Apr. 30, 1999). The USDA responded, "[f]raudulent activity in the [Food Stamp Program ("FSP")] or other government programs, or in *business-related activities in general*, reflects on the ability of a firm to effectuate the purposes of the FSP and abide by the rules governing the program." 64 Fed Reg. at 23,168 (emphasis added). The USDA continues:

> As provided in this final rule, business integrity matters that fall under this category include conviction or civil judgment for offenses such as: embezzlement, theft, forgery, bribery, false statements, receiving stolen property, false claims, or obstruction of justice; *commission of fraud in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction*; and violation of Federal, State and/or local consumer protection laws or other laws relating to alcohol, tobacco, firearms, controlled substances and/or gaming licenses.

64 Fed. Reg. at 23,168 (emphasis added). Notably, the phrase "or criminal offense" is not a part of the USDA's explanation of its changes to the final rule, supporting the court's conclusion that

criminal offenses must involve an element of fraud or directly implicate the business integrity of a firm to fall within the meaning of 7 C.F.R. § 278.1(b)(3)(i)(A).

The court notes its conclusion is narrow and based on the facts of this case. A criminal offense involving a transaction, without more, is not what 7 C.F.R. § 278.1(b)(3)(i)(A) captures. In this case, the court has no facts before it which shows a nexus between McDaniel's Convictions and the business integrity of the Plaintiffs. Had McDaniel, as owner of his store, delivered the controlled substances at his store, this could be conduct that directly implicates the business integrity of a firm.

### B. Auer *Deference is Inappropriate*

Since the court has emptied its "toolbox" and finds the regulation unambiguous, the court need not evaluate the *Kisor* factors to determine if an ambiguous regulation is still entitled to deference. The court notes, however, that while *Kisor* does not clarify what is or is not an agency's "authoritative" or "official position," the court doubts that a FAD fits that definition. *See Kisor*, 139 S. Ct. at 2416–17. The court also doubts the Agency's interpretation reflects the "fair and considered judgment" necessary for *Auer* deference. *Id.* at 2417. Rather, the Agency's interpretation appears to be litigation-driven after the Eastern District of Kentucky declined to afford *Auer* deference to FNS when it permanently denied an applicant with a drug possession conviction pursuant to 7 C.F.R. § 278.1(b)(3)(i)(C). *See Warren v. United States*, Civ. No. 14–154–GFVT, 2015 WL 5321765 (E.D. Ky. Sept. 11, 2015). In this instance, the Agency's interpretation of 7 C.F.R. § 278.1(b)(3)(i)(A), an unambiguous regulation, is not entitled to *Auer* deference, nor is the Agency's reading of its regulation reasonable.

III. The Agency's Decision is Erroneous, Arbitrary, and Capricious

McDaniel's Convictions do not fall within the scope of 7 C.F.R. § 278.1(b)(3)(i)(A) because a conviction for delivery of controlled substances is not a fraud-like crime related to Plaintiffs' business integrity. Therefore, the Agency's permanent denial under the cross-referenced Section 278.1(k)(3)(i) was not in accordance with the law and fails the arbitrary and capricious standard. The court's findings are narrow, however. The court's conclusion is limited to 7 C.F.R. § 278.1(b)(3)(i)(A), the only subsection on which the Agency relied to permanently deny Plaintiffs' application for authorization to participate in SNAP. (Compl., Ex. A.) Section 278.1(b) has many other factors under which Plaintiffs must qualify, and those issues are not before the court. 7 C.F.R. § 278.1(b). Outright reversing the FAD, as Plaintiffs request, is premature.

The court concludes remanding to the Agency is the appropriate remedy. "Congress has designated FNS as the expert in all matters related to SNAP, including the interpretation of those other provisions, and 'the interests of both justice and of uniformity in the application of the regulations will best be served by allowing the [A]gency . . . to consider the matter afresh.'" *Warren* at *10 (quoting *Della Valle v. United States*, 626 F. Supp. 288, 395 (D. R.I. 1986)). The court has further support from Congress for this flexible approach. 7 U.S.C. § 2023(16) ("If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence.") Since the court has no evidence before it on which to evaluate Plaintiffs' qualifications under other provisions of Part 278.1, remanding to FNS to re-assess Plaintiffs' request for authorization, in light of the meaning of 7 C.F.R. § 278.1(b)(3)(i)(A), is most appropriate.

Page 16 – FINDINGS AND RECOMMENDATION

*Conclusion*

For the reasons stated above, the court finds McDaniel's Convictions do not fall within the meaning of 7 C.F.R. § 278.1(b)(3)(i)(A), and therefore, the Agency's permanent denial of authorization pursuant to 7 C.F.R. § 278.1(k)(3)(i) was erroneous, arbitrary, and capricious. Plaintiffs' motion for summary judgment (ECF No. 33) should be GRANTED, in part, and DENIED, in part, and Defendant's motion for summary judgment (ECF No. 38) should be DENIED. The court should vacate the Agency's decision, and remand for further proceedings before the FNS consistent with this Findings and Recommendation.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due within fourteen (14) days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 16th day of December, 2019.

                                                    JOHN V. ACOSTA
                                           United States Magistrate Judge